UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

QUILLER, INC.,

                Plaintiff,

-against-

UNITED STATES OF AMERICA, and the
UNITED STATES POSTAL SERVICE,

                Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _9/13/2022_

20 Civ. 2513 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiff, Quiller, Inc., brings this action against Defendants the United States of America and the United States Postal Service (the "USPS") (together, the "Government"), asserting claims under the Federal Torts Claims Act (the "FTCA"), 28 U.S.C. § 1346, for property damage and loss of use/lost profits arising out of an incident in which a truck owned by the USPS collided with an auto-hauling vehicle owned by Plaintiff. *See* Compl., ECF No. 1. The Government moves for summary judgment under Federal Rule of Civil Procedure 56. Gov. Mot., ECF No. 55. For the reasons stated below, the Government's motion is GRANTED.

## BACKGROUND[1]

    In 2000, Fletcher Quiller founded Quiller, Inc., a company intended to transport vehicles. 56.1 ¶ 1, ECF No. 64. Between 2013 and 2017, Plaintiff did not own an auto-hauling vehicle and was, therefore, not transporting other vehicles. *Id.* ¶ 4. On August 29, 2017, Plaintiff purchased a used auto-hauling vehicle for $10,683.51 (the "Vehicle"). *Id.* ¶ 5. The Vehicle consisted of two component parts—a truck and a trailer. *Id.*

---

[1] The facts in this section are taken from the parties' 56.1 statements, unless otherwise noted. Citations to a paragraph in the Rule 56.1 statement also include the other party's response. The Court considers admitted for purposes of the motion any paragraph that is not specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party. Local Civ. R. 56.1(c). Where there are no citations, or where the cited materials do not support the factual assertions in the statements, the Court is free to disregard the assertion. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001).

On September 6, 2017, Plaintiff purchased insurance for the Vehicle from Progressive Casualty Insurance Co. ("Progressive"). *Id.* ¶ 6. The insurance policy (the "Policy") provided that "[i]n the event of any payment under th[e] policy," Progressive was "entitled to all the rights of recovery of the person or organization to whom payment was made." Policy at 23, ECF No. 58-4. The Policy further provided that "[i]n the event recovery has already been made from the responsible party, any rights to recovery by the person(s) claiming coverage under this policy no longer exist." *Id.*

As of September 7, 2017, Plaintiff had not used the Vehicle for business purposes. 56.1 ¶ 9. On that date, a USPS truck collided with the Vehicle, which was parked on the street on Webster Avenue in the Bronx. *Id.* ¶¶ 10–11. After the incident, the truck of the Vehicle remained in driving condition. *Id.* ¶ 12. Plaintiff did not have the Vehicle repaired and did not rent a replacement auto-hauler. *Id.* ¶¶ 15–16. On November 9, 2017, Plaintiff advertised that he was looking to sell the Vehicle for $17,500. *Id.* ¶ 24. Potential purchasers inquired about purchasing the Vehicle for $8,000 or $9,000, but Plaintiff did not accept those offers. *Id.* ¶¶ 25–26.

On April 23, 2019, the Vehicle was towed from Webster Avenue. *Id.* ¶ 13. Plaintiff did not recover the Vehicle, *id.* ¶ 14, and did not purchase a new vehicle until the end of 2019, when it purchased an auto-hauler for $8,250, *id.* ¶¶ 17, 22. As of May 13, 2021, Plaintiff had not begun using its new auto-hauler for business purposes. *Id.* ¶ 23.

About a year after the incident, Plaintiff submitted an insurance claim to Progressive. *Id.* ¶ 27. On September 11, 2018, Progressive paid Plaintiff $3,720.88 to repair the damage to the truck component of the Vehicle, which could have been repaired for a few thousand dollars. *Id.* ¶¶ 28–29. Progressive also paid Plaintiff $8,338 for the value of the totaled trailer, minus $2,275 to reflect that Plaintiff was retaining possession of the trailer and a $1,000 deductible. *Id.* ¶ 30. Then, on October 30, 2019, Progressive refunded Plaintiff's deductible, bringing the amount Plaintiff recovered to

$13,058.88. *Id*. ¶ 31. On December 3, 2018, Progressive submitted a claim to the USPS for the property damage to the Vehicle. *Id*. ¶ 32. On July 24, 2019, the USPS settled Progressive's claim for $12,783.88. *Id*. ¶ 34. The settlement letter stated that "[a]cceptance of this check operates as a complete release and bars recovery of any additional or future claims against the United States, the [USPS], or any employee whose act or omission gave rise to the claim by reason of the same subject matter." Settlement at 1, ECF No. 58-13.

On May 22, 2018, Plaintiff submitted a claim to the USPS for $30,000 in property damage and $250,000 in "[e]xpected loss of profits for 12 months for loss of use before replacement." Claim at 1, ECF No. 58-14. On November 19, 2018, the USPS wrote Plaintiff a letter requesting "any additional supporting documentation" for its claims. Letters at 6, ECF No. 58-15. On December 4, 2018, the USPS wrote another letter requesting specific documentation in support of Plaintiff's claims. *Id*. at 5. Then, on March 28, 2019, the USPS wrote a third letter requesting additional documentation. *Id*. at 4. And, on June 18, 2019, the USPS wrote a fourth letter following up on its request and explaining that it was "not able to properly evaluate [Plaintiff's] administrative claim" without additional information. *Id*. at 3. On September 25, 2019, the USPS denied Plaintiff's claim for "failure to submit competent evidence of [its] damages as [was] required." *Id*. at 1.

On March 23, 2020, Plaintiff filed its complaint, bringing claims for property damage and lost profits. Compl. Then, on December 1, 2021, the Government filed a motion for summary judgment. Gov. Mot.

## DISCUSSION

I. Legal Standard

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986); *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322–26 (1986).  A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  The moving party initially bears the burden of informing the court of the absence of a genuine dispute of material fact by citing particular evidence in the record.  Fed. R. Civ. P. 56(c)(1); *see also Celotex*, 477 U.S. at 323–24; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002).  If the nonmoving party has the ultimate burden of proof on specific issues at trial, the movant may also satisfy its own summary judgment burden by demonstrating that the adverse party cannot produce admissible evidence to support an issue of fact.  *See Celotex*, 477 U.S. at 322–23; *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo*, 315 F.3d at 105.  In doing so, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation," *Scott v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998), as "unsupported allegations do not create a material issue of fact," *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).  In deciding the motion, the court views the record in the light most favorable to the nonmoving party.  *Koch*, 287 F.3d at 165.

II. Application

A. Property Damage

With respect to Plaintiff's claim for property damage, the Government argues that Plaintiff is not entitled to recover damages because the Policy precludes such relief.  Gov. Mem. at 6–9, ECF No. 56.  The Court agrees.

New York law recognizes two forms of subrogation in the context of an insured-insurer relationship—(1) contractual subrogation and (2) equitable subrogation.  *See Fed. Ins. Co. v. Arthur Andersen & Co.*, 75 N.Y.2d 366, 372 (N.Y. 1990).  Contractual subrogation refers to a situation in which "the subrogee's rights are defined in an express agreement between the insurer-subrogee and

4

the insured-subrogor." *Id*. And, equitable subrogation refers to a situation in which the subrogee's rights "arise independently of any agreement." *Id*. When parties to insurance policies include subrogation provisions in their contract, their "rights must be governed by the terms of the policy." *World Trade Ctr. Properties LLC v. QBE Int'l Ins. Ltd.*, 627 F. App'x 10, 13 (2d Cir. 2015) (quoting *J&B Schoenfeld, Fur Merchants, Inc. v. Albany Ins. Co.*, 109 A.D.2d 370, 373 (1st Dep't 1985)). But, "when giving meaning to contractual subrogation provisions, courts appropriately rely on equitable subrogation principles on the assumption that, absent an evident intention to the contrary, the parties meant to incorporate those principles." *Id*. One of these equitable subrogation principles is the "made whole rule," based on which an insured is considered fully compensated when it "has recovered its legally recoverable tort damages." *Id*.

The express terms of the Policy provide that "[i]n the event recovery has already been made from the responsible party, any right to recovery by the person(s) claiming coverage under this policy no longer exist." Policy at 23. Progressive has already recovered from the USPS. *See* Settlement. Thus, under the plain terms of the Policy, Plaintiff's right to recovery "no longer exist[s]." Policy at 23. This language does not leave room for an interpretation that incorporates the "made whole rule" or any other equitable subrogation rules that preserve Plaintiff's ability to recover for its property damage from the Government.[2] *Cf. Colabella v. Hernandez*, 185 A.D.3d 545, 546 (2d Dep't. 2020).

Accordingly, the Government's motion for summary judgment on Plaintiff's claim for property damage is GRANTED.

---

[2] Plaintiff advances no arguments in support of a different interpretation of this contractual language; rather, its arguments focus entirely on the application of equitable subrogation principles without regard to the wording of the insurance contract governing its agreement with Progressive. *See* Pl. Mem. at 2–4, ECF No. 63.

B. Lost Profits/Loss of Use

With respect to Plaintiff's claims for lost use/lost profits, the Government first argues that Plaintiff can recover only for the value of a rental replacement for the damaged auto-hauler. Gov. Mem. at 11–21. The Court agrees.

Under New York law, plaintiffs can recover for the "loss of use" of their vehicle in the event a vehicle is damaged or destroyed. *See Mahar v. U.S. Xpress Enter., Inc.*, 688 F. Supp. 2d 95, 114 (N.D.N.Y. 2010). "In order to prove a claim for loss of use, the owner must 'offer expert testimony as to the cost of renting a replacement vehicle for the period reasonably required to make repairs to [the] damaged vehicle.'" *Id*. (quoting *Roundtree v. Singh*, 143 A.D.2d 995, 995 (2d Dep't 1988); *see also Koninklijke Luchtvaart Maatschaapij, N.V. v. United Techs. Corp.*, 610 F.2d 1052, 1055–56 (2d Cir. 1979) ("Rental value may provide a measure of loss of use damages even though a substitute vehicle has not actually been hired."). And, although "there is some dispute among New York courts as to whether a replacement vehicle must be utilized and whether actual losses must be suffered, it is well settled that, unless the owner can prove that it was unable to obtain a suitable substitute, the reasonable rental cost of a replacement is the appropriate measure of loss of use damages." *Mahar*, 688 F. Supp. 2d at 114 (footnote omitted).

Plaintiff contends that "there was no rental market for auto-haulers" at the time of the incident, and that, therefore, the "measure of damages becomes loss of use/profits." Pl. Mem. at 4–5. But, Plaintiff has put forward no admissible evidence demonstrating that he was unable to obtain a suitable replacement vehicle. In his deposition, Mr. Quiller stated that he did not make any efforts to rent a replacement truck because "[i]n this industry, you really cannot rent these type[s] of trucks. It's a highly specialized truck." Quiller Tr. at 50:14–20, ECF No. 58-1. In answering a question about why he wrote "none" in response to an interrogatory asking him to "identify all persons or entities Plaintiff researched or contacted in order to rent or purchase a replacement," Mr. Quiller

6

responded that "[t]here's no one in [his] immediate area or surrounding area that does this type of service." *Id*. at 61:23–62:8.  And, in his affidavit, Mr. Quiller stated that "there was no rental market for auto-haulers at the relevant time." Quiller Aff. ¶ 6, ECF No. 66.

These statements are insufficient to create a material issue of fact.  Mr. Quiller has not been put forth as an expert witness and this testimony, which relies on specialized knowledge regarding the availability of rental trucks in the auto-hauling industry, is not a proper subject for lay opinion testimony.  *See* Fed. R. Evid. 701(c); *cf. United States v. Kaplan*, 490 F.3d 110, 118 (2d Cir. 2007). Additionally, Plaintiff has not shown that this testimony is "rationally based on [Mr. Quiller's] perception," Fed. R. Evid. 701(a), because it has not demonstrated that the testimony is "based on [his] first hand perceptions," *Kaplan*, 490 F.3d at 119.  Indeed, Mr. Quiller expressly disclaimed conducting any research or making any attempts to procure a rental vehicle.  *See* Quiller Tr. 61:23–62:8.  Therefore, Plaintiff has failed to introduce evidence "sufficient to support a finding that the witness has personal knowledge of the matter."  *Kaplan*, 490 F.3d at 119 (quoting Fed. R. Evid. 602). And, because Plaintiff "does not offer any proof suggesting that it was unable to obtain a suitable substitute" for the Vehicle, "reasonable rental cost, and not lost profits, is the correct measure [of damages.]"  *Mahar*, 688 F. Supp. 2d at 114.

The Government next argues that, assuming *arguendo* that Plaintiff has submitted admissible evidence to establish the reasonable rental costs, it cannot recover those costs because it failed to exhaust such a claim during the administrative proceedings.  Gov. Mem. at 16–18.  The Court agrees.

For claims brought under the FTCA, presenting the claim to a government agency is a "jurisdictional prerequisite" to suit.  *Collins v. United States*, 996 F.3d 102, 109 (2d Cir. 2021).  To satisfy this requirement, a claimant must "present[] the appropriate agency with sufficiently specific information—whether by narrative, by evidence, or by other means—to permit the agency to conduct an investigation and then to estimate the value of the claim." *Id*. at 114.

Here, Plaintiff's administrative claim stated that it was seeking "[e]xpected loss of profit for 12 months for loss of use before replacement." Claim at 1. It does not even "vaguely reference" that Plaintiff sought damages for the reasonable rental cost of his damaged auto-hauler. *Pina v. United States*, No. 20 Civ 1371, 2021 WL 1947739, at *2 (S.D.N.Y. May 12, 2021), *adhered to*, 2021 WL 2418747 (S.D.N.Y. June 14, 2021). This failure "precluded the agency from 'estimat[ing] the claim's worth' in this respect." *Id*. (quoting *Collins*, 996 F.3d at 104–05) (alteration in original). In response, Plaintiff argues that the Government is "not in any way prejudiced" by this failure. Pl. Mem. at 7. But, because the presentment requirement is jurisdictional, it cannot be "equitably excused." *Pina*, 2021 WL 1947739, at *2. Therefore, Plaintiff is barred from seeking the only form of damages available to him under the circumstances of this case.

Accordingly, the Government's motion for summary judgment on Plaintiff's claim for lost profits/loss of use is GRANTED.

## CONCLUSION

For the reasons stated above, the Government's motion for summary judgment is GRANTED. The Clerk of Court is directed to terminate the motion pending at ECF No. 55 and close the case.

SO ORDERED.

Dated: September 13, 2022
       New York, New York

_____
ANALISA TORRES
United States District Judge